## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

——————————————————————

STEVEN SCHWARTZ,                              :
                                             :
            Petitioner,                       :          Civ. No. 15-4601 (RBK)
                                             :
    v.                                        :
                                             :
J. HOLLINGSWORTH,                             :
                                             :          **OPINION**
                                             :
            Respondent.                       :

——————————————————————  :

**ROBERT B. KUGLER, U.S.D.J.**

### I.    INTRODUCTION

Petitioner Steven Schwartz ("Petitioner"), is a federal prisoner currently incarcerated at FCI Schuylkill, Pennsylvania. He is proceeding *pro se* with a petition for a writ of habeas corpus challenging his convictions pursuant to 28 U.S.C. § 2241 and requests that the Court hold an evidentiary hearing as to his claims. For the reasons stated below, the Court will deny the petition.

### II.    BACKGROUND

This case arises from two related matters. First, in January of 2003, a grand jury returned an indictment, charging Petitioner with: conspiracy to commit bank fraud, wire fraud, and identity theft; wire fraud; bank fraud; identity theft; and use of a fictitious name for mailing, in violation of 18 U.S.C. §§ 371, 1028(a)(7), 1342, 1343, and 1344. Petitioner had operated a ponzi scheme from 1997 to 2002, where he recruited new "investors" and used their "investments" to pay earlier investors and to fund his personal expenses. *See United States v. Schwartz*, Crim. No. 03–35 (E.D.Pa. Jan. 16, 2003) (the "03–35 action"). Petitioner could not maintain the scheme with client funds alone and resorted to "check-kiting," where he wrote and deposited worthless checks into

bank accounts under his control and then withdrew those funds before the bank could verify that the funds did not actually exist.

While that case was pending before Judge Stewart Dalzell, the Government presented evidence that Petitioner engaged in criminal activity while on supervised release. "Petitioner made online payments to credit card companies from bank accounts with insufficient funds. These payments increased Schwartz's available credit line . . . [where] [h]e then incurred new charges on the credit cards before the payments were rejected." *United States v. Schwartz*, Crim. No. 04-231, 2012 WL 1694292, at *1 (E.D. Pa. May 15, 2012). Petitioner testified that he believed he would have sufficient funds to cover those payments based on an anticipated loan and the sale of his mother's house, but Judge Dalzell found that there was probable cause to believe Petitioner had engaged in criminal activity and revoked his bail.

Based on Petitioner's conduct during supervised release, a grand jury returned a new indictment in April of 2004, charging Petitioner with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and a superseding indictment in June of 2004, charging Petitioner with an additional seven counts of wire fraud in violation of 18 U.S.C. § 1343. *See United States v. Schwartz*, Crim. No. 04-231 (E.D. Pa. Apr. 22, 2004) (the "04-231 action").

Thereafter, the 03-35 action proceeded to trial, where the Government presented evidence that Petitioner committed, among other things, bank fraud under Counts 8 through 16 of the indictment. As will be relevant later in the discussion, Petitioner committed two varieties of bank fraud. Under Counts 8 through 10, Petitioner committed bank fraud by forging the signature of his then-fiancée Peggy Sue Dorsey, on three checks from her closed bank account. Petitioner then deposited those checks, totaling $42,000.00, to bank accounts under his control and then withdrew the funds before the banks realized that the funds did not exist.

2

In contrast, although Counts 11 through 16 also involved check-kiting, Petitioner would write checks from his own bank accounts with insufficient funds, rather than forge the name of others. Petitioner then presented those checks for "cash," or deposited those checks to other bank accounts under his control and then withdrew those funds, totaling $434,000.00.

Judge Dalzell held a charge conference, during which, Petitioner objected to the proposed bank fraud instructions, which charged bank fraud as one offense, and permitted the jury to find Petitioner guilty if it found that he *either* executed a scheme or artifice to defraud a bank, under § 1344(1) *or* obtained money from a bank "by means of false or fraudulent pretenses, representations, or promises," under § 1344(2). 18 U.S.C. § 1344; (*See* ECF No. 1, at 4). Petitioner argued that writing a check on insufficient funds did not constitute a "representation" in light of the Supreme Court's decision in *Williams v. United States*, 458 U.S. 279, 284–85 (1982). Judge Dalzell denied Petitioner's request and charged the jury in the disjunctive, allowing the jury to convict Petitioner under either theory.

On April 22, 2005, a jury convicted Petitioner of conspiracy to commit wire and bank fraud and identity theft; five counts of wire fraud; nine counts of bank fraud; and one count of use of a fictitious name for mailing.

Although initiated later, the 04-231 action proceeded to trial prior to the 03-35 action. At that trial, the Government presented evidence that Petitioner committed, among other things, bank fraud under Counts 1 and 2. As to Count 1, Petitioner committed bank fraud by making an on-line payment of $3,664.15 from his checking account at Citizens Bank to his Providian Bank VISA account. Petitioner knew he had insufficient funds to cover the payment and then used the newly available credit to incur approximately $2,700.00 in additional credit charges.

Similarly, under Count 2, Petitioner made online payments totaling $7,379.59 from his Citizens Bank account to various credit cards he held with Capital One Bank, each time knowing he had insufficient funds to cover the payment.   Petitioner then incurred additional credit charges.

Like the 03-35 action, Petitioner alleges that he directed his counsel to object to the bank fraud instruction in accordance with *Williams*.[1] (ECF No. 14, at 15).  Judge Harvey Bartle, III, denied Petitioner's request, and charged the jury in the disjunctive, allowing the jury to convict Petitioner under either the bank fraud statute's "scheme to defraud" theory or its "obtain money by false representation" theory. (*see id*. at 15–16; App.[2] 1278).

On November 18, 2004, after a two-day trial, the jury convicted Petitioner of two counts of bank fraud and seven counts of wire fraud. (App. 1036). On April 11, 2005, Judge Bartel sentenced Petitioner to eighteen months' imprisonment in the 04-231 action, and on July 26, 2005, Judge Dalzell imposed a consecutive sentence of 225 months' imprisonment in the 03-35 action. *United States v. Schwartz*, No. 04-231, 2012 WL 1694292, at *4 (E.D. Pa. May 15, 2012).

Petitioner filed an appeal in each case.  The Third Circuit consolidated the appeals and affirmed Petitioner's convictions and sentences. *United States v. Schwartz*, 315 F. App'x 412 (3d Cir. 2009).  Petitioner then petitioned the United States Supreme Court for a writ of *certiorari*, and the Supreme Court denied that petition on April 26, 2010. *Schwartz v. United States*, 559 U.S. 1094 (2010).

Shortly thereafter, Petitioner filed a timely motion for habeas corpus relief, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence, in each of the underlying actions.  On

---

[1] Petitioner acknowledges that this charge conference was not on the record, but the Court will assume, for the purpose of this Petition, that Petitioner's attorney lodged his *Williams* objection.

[2] "App." refers to the appendix in this matter, which, according to Respondent, was too large to electronically file.

May 15, 2012, Judge Bartle denied the § 2255 petition in the 04-231 action, and on February 20, 2013, Judge Dalzell denied the § 2255 petition in the 03-35 action. *United States v. Schwartz*, 925 F. Supp. 2d 663, 669 (E.D. Pa. 2013); *United States v. Schwartz*, No. 04-231, 2012 WL 1694292, at *4 (E.D. Pa. May 15, 2012).

Petitioner then filed a petition for habeas relief under 28 U.S.C. § 2241, which is presently before this Court.

### III.    STANDARD OF REVIEW

"Habeas corpus petitions must meet heightened pleading requirements."  *McFarland v. Scott*, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified."  28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004), applicable to § 2241 petitions through Habeas Rule 1(b).  A court presented with a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled there."  28 U.S.C. § 2243.

Thus, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."  *McFarland*, 512 U.S. at 856; *see also Siers v. Ryan*, 773 F.2d 37, 45 (3d Cir. 1985).  "[A] district court is authorized to dismiss a [habeas] petition summarily when it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court[.]" *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

### IV.    DISCUSSION

Petitioner challenges his convictions and sentences in this 28 U.S.C. § 2241 federal habeas action.  Generally, a person must bring a challenge to the validity of a federal conviction or

sentence under 28 U.S.C. § 2255.  *See Jackman v. Shartle*, 535 F. App'x 87, 88–89 (3d Cir. 2013) (citing *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)).  This is generally true because § 2255 prohibits a district court from entertaining a challenge to a prisoner's federal sentence through § 2241 unless the remedy under § 2255 is "inadequate or ineffective."  *See* 28 U.S.C. § 2255(e).  Indeed, § 2255(e) states that:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such a court has denied him relief, unless it also appears that the remedy by the motion is inadequate or ineffective to test the legality of his detention.

A § 2255 motion is "inadequate or ineffective," which permits a petitioner to resort to a § 2241 petition, "only where the petitioner demonstrates that some limitation or procedure would prevent a § 2255 proceeding from affording him a full hearing and adjudication of his wrongful detention claim."  *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002) (citations omitted).  However, § 2255 "is not inadequate or ineffective merely because the sentencing court does not grant relief, the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent gatekeeping requirements of ... § 2255."  *Id.* at 539 (citations omitted).  "It is the inefficacy of the remedy, not the personal inability to use it, that is determinative."  *Id.* at 538 (citation omitted).  "The provision exists to ensure that petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural requirements."  *Id.* at 539 (citing *In re Dorsainvil*, 119 F.3d 245, 251–52 (3d Cir. 1997)).

In *Dorsainvil*, the Third Circuit held that the remedy under § 2255 is "inadequate or ineffective," permitting resort to § 2241 (a statute without timeliness or successive petition limitations), where a prisoner who previously had filed a § 2255 motion on other grounds "had no

earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate."  119 F.3d at 251.

Nevertheless, the Third Circuit emphasized that its holding was not suggesting that a § 2255 motion was "inadequate or ineffective" merely because a petitioner is unable to meet the strict gatekeeping requirements of § 2255. *See id.*

Thus, under *Dorsainvil* and its progeny, this Court would have jurisdiction over Petitioner's petition if, and only if, Petitioner alleges: (1) his "actual innocence," (2) as a result of a retroactive change in substantive law that negates the criminality of his conduct, and (3) for which he had no other opportunity to seek judicial review. *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 180 (3d Cir. 2017); *Okereke*, 307 F.3d at 120; *Cradle*, 290 F.3d at 539; *Dorsainvil*, 119 F.3d at 251–52.

Here, Petitioner relies on the Supreme Court's recent decision in *Loughrin v. United States*, 134 S. Ct. 2384, 2388–90 (2014), to conclude that the "underfunded" checks which formed the basis of his bank fraud convictions, could not, as a matter of law, constitute false representations under 18 U.S.C. § 1344(2).    Consequently, Petitioner renews his argument, that the jury instructions erroneously allowed the jurors to convict Petitioner if he *either* executed a scheme or artifice to defraud a bank under § 1344(1) *or* obtained money from a bank "by means of false or fraudulent pretenses, representations, or promises," under § 1344(2). 18 U.S.C. § 1344; (*See* ECF No. 1, at 4).  According to Petitioner, because some of the jurors may have convicted him on a now invalid theory, the Court must vacate his bank fraud convictions or alternatively, order a new trial without the invalid theory. (ECF No. 14, at 14–17).

Under the bank fraud statute, 18 U.S.C. § 1344:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

In *Loughrin*, the Supreme Court clarified that § 1344 encompasses two separate offenses, rather than one offense with disjunctive elements. *Loughrin*, 134 S. Ct. at 2390.  In that case, the Government charged Loughrin under § 1344(2), for stealing checks from residential mailboxes, forging signatures, and then making purchases at a retailer with those checks, only to return the goods for cash. *Id*. at 2391.  Loughrin argued that § 1344 encompassed only one offense, and that therefore, the statute required the Government to prove he intended to defraud a bank, in addition to proving that he obtained bank property by means of false pretenses. *Id*. at 2387–88.  Effectively, he argued that while he may have intended to defraud the retailer, he did not intend to defraud a bank. *Id*.

The Court rejected Loughrin's argument and found that offenses under § 1344(2) do not require either intent to defraud a bank or a risk of loss to a bank, emphasizing that intent to defraud a bank is central only to offenses under § 1344(1). *Id*. at 2388–89, 2395 n.9.  In so holding, the Supreme Court abrogated *United States v. Thomas*, 315 F.3d 190, 199–201 (3d Cir. 2002), which held that Section 1344 created only one offense, requiring both intent to defraud a bank and a risk of loss to the bank. *Loughrin*, 134 S. Ct. at 2388–89, 2395 n.9.  Additionally, the *Loughrin* Court acknowledged, in *dicta*, that the Courts of Appeal (that have addressed the issue) have unanimously found that the Government can only prosecute the writing of checks against an

account with insufficient funds under § 1344(1) "because such schemes do not involve any false representations." *Id*. at 2390 n.4.

Consistent with our jurisprudence at the time of his trials, Judge Dalzell and Judge Bartle instructed their respective juries that Petitioner's "underfunded" checks could constitute bank fraud if the Government proved that Petitioner executed or attempted to execute a scheme or artifice: (1) to defraud a financial institution, under § 1344(1) *or* obtained money from a financial institution by means of fraudulent or false pretenses, representations, or promises, under § 1344(2); (2) that Petitioner did so knowingly and with intent to defraud; and (3) that the financial institutions were federally insured at the time of the offense. (App. 1278, 2466); *see Thomas*, 315 F.3d at 197 (holding that there was "no such thing as an independent violation under [§ 1344(2)]"), *abrogated by Loughrin*, 134 S. Ct. 2384.  Although the courts instructed each jury on the first element in the disjunctive, the instructions as a whole conveyed that § 1344 creates only one offense. (App. 1278, 2466).

Consequently, because *Loughrin* clarified that § 1344 creates two offenses with distinct elements, there "stands a chance that [Petitioner] is incarcerated for conduct that does not constitute a crime." *Bruce*, 868 F.3d at 181.  As this intervening change in the law did not occur until 2014, long after Petitioner's convictions became final, and after the conclusion of his initial § 2255 motions – he "had no earlier opportunity to test the legality of his detention" under *Loughrin*. *Cf. id*. (finding jurisdiction under similar circumstances).

Lastly, the Court must determine[3] whether *Loughrin*, as an intervening change in the law, applies retroactively to cases on collateral review. *Id*.  at 180 (citing *Dorsainvil*, 119 F.3d at 251). Generally, "new constitutional rules of criminal procedure do not apply retroactively to

---

[3] A review of the case law in the Third Circuit and in the federal courts more generally, reveals that no court has squarely addressed this issue.

convictions that are already final." *Id*. at 181.  There are two exceptions to that general bar, new *substantive* rules and new "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id*.  (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004)).  A rule is new "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final," and a "rule is substantive rather than procedural if it alters the range of conduct . . . that the law punishes." *See Schriro*, 542 U.S. at 353; *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original).

Such rules include "decisions that narrow the scope of a criminal statute by interpreting its terms." *Schriro*, 542 U.S. at 351–52.  By interpreting the bank fraud statute to constitute two distinct offenses, *Loughrin* narrowed its scope, and therefore announced a new rule of substantive law that applies retroactively in cases on collateral review.  *Cf. Bruce*, 868 F.3d at 182.

Accordingly, Petitioner has set forth a prima facie *Dorsainvil* claim and the Court has jurisdiction under § 2241 to address the merits of his claim. *Id*. at 180; *Dorsainvil*, 119 F.3d at 251–52.  Petitioner must still establish, however, that the Supreme Court's interpretation of the bank fraud statute in *Loughrin*, renders his conduct non-criminal such that he is actually innocent of bank fraud. *Jennings v. Quintana*, 563 F. App'x 882, 884 (3d Cir. 2014).

To support an actual innocence claim, a petitioner must "establish that 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  A petitioner can establish that no reasonable juror would have convicted him by demonstrating an intervening change in law that rendered his conduct non-criminal. *See United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005) (citing *Bousley*, 523 U.S. at 623).  While *Bousley* addressed the standard for claims under § 2255, this standard applies equally to actual innocence

claims under § 2241. *See, e.g.*, *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006); *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003).

Because "'actual innocence' means factual innocence, not mere legal insufficiency," the Government "is not limited to the existing record to rebut any showing that [the] petitioner may make." *Bruce*, 868 F.3d at 184 (quoting *Bousley*, 523 U.S. at 623–24). Consequently, courts do not exercise their "independent judgement as to whether reasonable doubt exists;" rather, the actual innocence standard requires courts "to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 298 (1995)). In making this determination, courts must presume a reasonable juror "would consider fairly all of the evidence presented" and "conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*

**A.** ***Petitioner's Assertion of Trial Court Errors***

Petitioner contends that the jury instructions erroneously charged bank fraud as one offense and erroneously charged that a check drawn on insufficient funds can constitute a false representation under § 1344(2). After *Loughrin*, a conviction for bank fraud can result from either of § 1344's two subsections, as distinct offenses. First, under the scheme to defraud theory, § 1344(1), the Government must prove (1) that the defendant knowingly engaged in a scheme to defraud a financial institution; (2) that defendant did so with intent to defraud the financial institution; and (3) that the financial institution was federally insured. *Loughrin*, 134 S. Ct. at 2389–90; Model Jury Instructions, Criminal, Third Circuit, § 6.18.1344.

In contrast, under the means theory, § 1344(2), the Government need only prove: (1) that the defendant knowingly engaged in a scheme to obtain the money, funds or other property owned by or under the control of a financial institution by means of fraudulent or false pretenses,

representations, or promises; and (2) that the financial institution was federally insured. *Loughrin*, 134 S. Ct. at 2389; *see* Model Jury Instructions, Criminal, Third Circuit, § 6.18.1344.  Under this subsection, the Government need not prove that defendant knew or intended that the money, funds, or property was owned by or under the control of the financial institution. *Loughrin*, 134 S. Ct. at 2389.

In the present case, consistent with Third Circuit precedent at the time, the court instructed each jury that the Government must prove that Petitioner executed or attempted to execute a scheme or artifice: (1) to defraud a financial institution *or* to obtain money from a financial institution by means of fraudulent or false pretenses, representations, or promises; (2) that Petitioner did so knowingly and with intent to defraud; and (3) that the financial institutions were federally insured at the time of the offense. (App. 1278; 2466); *see Thomas*, 315 F.3d at 199–201.

In light of *Loughrin*, the instructions in the present case were erroneous in the sense that they charged bank fraud as one offense with an interchangeable first element, rather than two distinct offenses. *Loughrin*, 134 S. Ct. at 2388.  Further, the jury instructions in the 03-35 action erroneously instructed that the Government had to prove a risk of loss to a financial institution. *Compare id.* at 2395 n.9, *with* App. 2466.

Furthermore, Petitioner contends that Judge Dalzell and Judge Bartle erred by instructing the jury that an underfunded check can constitute a false representation.  Petitioner relies on the Supreme Court's observations in *Loughrin*, where the Court provided an example of how the two bank fraud subsections are not superfluous. *Loughrin*, 134 S. Ct. at 2390 n.4.  In that example, the Court observed that the Courts of Appeals (which have addressed the issue) "have unanimously agreed that the Government can prosecute check kiting (i.e., writing checks against an account with insufficient funds in a way designed to keep them from bouncing) only under Clause (1),

because such schemes do not involve any false representations." *Id*. These remarks, however, were not necessary to form the Court's decision. *Id*. at 2390.

Instead, the Court relied on the "'cardinal principle' of interpretation that the courts 'must give effect, if possible, to every clause and word of a statute,'" to conclude that the bank fraud statute encompassed two distinct offenses. *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). Because Congress included the word "or" between § 1344(1) and § 1344(2), the Court presumed "that Congress intended a difference in meaning." *Id*. Accordingly, the Court rejected the notion that § 1344(2) was a mere subset of § 1344(1). *Id*.

Consequently, the Supreme Court's observations that "writing checks against an account with insufficient funds" does not involve a false representation, was not necessary to the Court's decision. *Loughrin*, 134 S. Ct. at 2390 n.4. The Supreme Court "could have deleted [those statements] without seriously impairing the analytical foundations of the holding." *In re McDonald,* 205 F.3d 606, 612 (3d Cir. 2000) (defining dictum). As a result, the Supreme Court's observations on check-kiting are *dicta* and are therefore not a holding and not binding authority. *Loughrin*, 134 S. Ct. at 2390 n.4; *American Civil Liberties Union of New Jersey ex rel. Lander v. Schundler*, 168 F.3d 92, 98 n. 6 (3d Cir.1999) ("[W]e have repeatedly held that *dicta* are not binding.").

Nevertheless, such an observation is persuasive. However, because the Third Circuit has declined to decide this issue in Petitioner's prior cases, and because determining this issue is not necessary to resolve this petition, the Court will assume, without deciding, that the jury instructions erred by charging that a worthless check can constitute a false representation. *See Schwartz*, 899 F.2d at 249 (Seitz, C.J., concurring)(observing that the majority implicitly recognized that the jury charge was erroneous because worthless checks are not "representations" and that the majority

13

found such error harmless); *see also Schwartz*, 315 F. App'x at 422 n.6 (rejecting, without discussing, Petitioner Schwartz's no "representation" argument as "meritless"); *Schwartz*, 2012 WL 1694292, at *8 (finding that *Williams*, 458 U.S. at 284–85, does not apply to the bank fraud statute).

Additionally, in Petitioner's reply, he appears to argue that the *dicta* in *Loughrin* mandates an evidentiary hearing on his conspiracy and wire fraud convictions. (ECF No 14, at 18). Petitioner improperly raised this issue for the first time in a reply brief, and the Court will not consider such arguments. *E.g. Gilbert v. United States*, No. 14-243, 2016 WL 4087274, at *5 (D.N.J. July 28, 2016); *Abbott v. Gigliotti*, No. 08-1310, 2010 WL 411830, at *7 (W.D. Pa. Jan. 28, 2010), *aff'd*, 457 F. App'x 103 (3d Cir. 2012)). In any event, even if the Court were inclined to entertain the claim, the Court would not have jurisdiction to consider the issue. Petitioner relies on the *dicta* discussed above, which would not constitute a retroactive change to the substantive law of conspiracy or wire fraud. Accordingly, the Court would not have jurisdiction under *Dorsainvil* to consider such a claim. *Dorsainvil*, 119 F.3d at 251–52.

### B. Harmless Error

Although the Court has found errors in the jury instructions, such errors do not warrant "habeas relief if the error is harmless." *Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014); *see also Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008); *Rodriguez v. Warden Lewisburg USP*, 645 F. App'x 110, 113 (3d Cir. 2016), *cert. denied sub nom. Rodriguez v. Thomas*, 137 S. Ct. 166 (2016) (applying harmless error review in the § 2241 habeas context). When a court instructs "a jury . . . on multiple theories of guilt, one of which is improper," the Supreme Court, in *Pulido*, held that courts on collateral review should conduct a harmless error analysis, so long as the error

"does not categorically vitiate *all* the jury's findings." *Pulido*, 555 U.S. at 61 (internal quotation marks omitted) (emphasis in original).

Under *Brecht*, an error is harmful if it "had substantial and injurious effect or influence in determining the jury's verdict." *Pagliaccetti*, 581 F. App'x at 136 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The Supreme Court elaborated, "that in cases of grave doubt as to [the] harmlessness [of an error] the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995). "Grave doubt" exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in a virtual equipoise as to the harmlessness of the error." *Id*. at 435.

Courts must examine the impact of the error on the trial as a whole. *Yohn v. Love*, 76 F.3d 508, 510 (3d Cir. 1996). "It is thus inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error. The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." *Id*. at 523.

### i. Alternative theory errors & the harmless-error inquiry

As a preliminary matter, Schwartz, like the petitioner in *Pulido*, "seeks to avoid the harmless-error inquiry altogether . . . maintain[ing] that when a jury returns a general verdict after being instructed on both a valid and an invalid theory, the conviction must be automatically set aside, without asking whether the invalid instruction was harmless." *Pulido*, 555 U.S. at 59. The Supreme Court explicitly rejected that argument, reasoning that an "instructional error arising in the context of multiple theories of guilt no more vitiates *all* the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." *Id*. at 61 (emphasis in original). To draw a "distinction between alternative-theory error and [singular theory] error" would claim that, "because the jury . . . received both a 'good' charge and a 'bad'

charge on the issue, the error was somehow more pernicious than" when the jury receives *only* a "bad" one. *Id.* (quoting *Pulido v. Chrones*, 487 F.3d 669, 678 (9th Cir. 2007) (O'Scannlain, J., concurring specially), *vacated and remanded sub nom. Pulido*, 555 U.S. 57).

Accordingly, the Court concluded that alternative-theory error is subject to harmless error review, unless the errors are structural errors. *Id.*; *United States v. Riley*, 621 F.3d 312, 323 (3d Cir. 2010). Structural errors "are the exception and not the rule" because they affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Pulido*, 555 U.S. at 61(referring to erroneous reasonable doubt instruction).

In contrast, the errors in the present case are of the "misstatement of an element" and extra element variety, which are not structural, but trial errors subject to harmless error review. *Pulido*, 555 U.S. at 59–61 (citing *Pope v. Illinois*, 481 U.S. 497 (1987) (applying harmless error in the misstatement of an element of an offense)); *United States v. Johnson*, 462 F.2d 423, 427 (3d Cir. 1972) (finding no prejudice where the instruction placed an additional, but unnecessary, burden of proof upon the government), *cert. denied*, 410 U.S. 937 (1973).

To avoid a harmless error analysis, Petitioner relies on *United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013). Assuming that a worthless check cannot constitute a false representation under § 1344(2), Petitioner argues that he is entitled to an evidentiary hearing, under *Tyler*, to determine whether he is actually innocent of either section of the statute. (ECF. No. 1, at 5).

In *Tyler*, a divided panel of the Court of Appeals for the Third Circuit, addressed the narrow question of whether the district court had jurisdiction, under § 2241, to review the merits of Tyler's habeas petition. *Tyler*, 732 F.3d at 243, 246, 253. Tyler argued that it was improper for the district court to dismiss his § 2241 petition for a lack of jurisdiction, because he prima facie alleged that

two recent Supreme Court decisions rendered his conduct non-criminal after his convictions became final. *Id.* at 246.

The Third Circuit agreed with Tyler and found that the Supreme Court's recent decisions limited the scope of *both* theories of conviction in his case and concluded that the district court erred by dismissing Tyler's § 2241 petition for a lack of jurisdiction. *Id.* at 253. The Third Circuit then remanded the case and directed the district court to conduct an evidentiary hearing to determine if Tyler was actually innocent under the modified "official proceedings" or "investigation-related communication" theories. *Id.*

The Court then offered directions on the proper procedure in two hypothetical scenarios on remand. *Id.* If the District Court found Tyler innocent under both theories, it must issue the writ of habeas corpus and vacate Tyler's convictions. *Id.* If, however, the district court concluded that Tyler was innocent under one, but not both theories, "it must order a new trial based only on the legally valid theory." *Id.*

This Court concludes that the alternative-theory directions on remand in *Tyler* constitutes *dicta* because the question before the Third Circuit was whether the district court had jurisdiction to consider the habeas petition under § 2241. *Id.* at 246. The Third Circuit, in applying *Dorsainvil*, analyzed whether: (1) the recent Supreme Court decisions constituted an intervening change in the law, (2) that supported Tyler's claim of actual innocence, and (3) for which Tyler had no earlier opportunity to seek judicial review. *Id.* at 246–53. Upon completing that analysis and holding that the district court "erred in concluding that it lacked jurisdiction," the Third Circuit resolved the only issue before the Court and remanded the case to the district court to conduct an evidentiary hearing. *Id.* at 252–53.

As a result, the Third Circuit "could have deleted" its alternative-theory directions on hypothetical scenarios "without seriously impairing the analytical foundations of the holding." *McDonald*, 205 F.3d at 612. Moreover, neither of the parties raised the issue of alternative-theory error and procedure in their briefs. *E.g. United States v. Bennett*, 100 F.3d 1105, 1110 (3d Cir. 1996) ("A court's statement concerning an issue not raised on appeal is *dicta*."). Consequently, although the Third Circuit's directions on hypothetical scenarios compelled[4] that particular district court on remand, they are nevertheless *dicta* and are therefore not a holding and not binding authority on subsequent cases. *McDonald*, 205 F.3d at 612; *Bennett*, 100 F.3d at 1110; *see Humphrey's Ex'r v. United States,* 295 U.S. 602, 627 (1935) ("The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.").

In any event, this Court concludes that when a petitioner is innocent under one, but not both theories, the Court must, prior to ordering a new trial, undertake a harmless-error analysis, so as to avoid a conflict with the Supreme Court's decision in *Pulido. Compare Tyler*, 732 F.3d at

---

[4] On remand, the district court complied with the Third Circuit's directions and ordered a new trial after concluding that Tyler was innocent under one of the two theories. *United States v. Tyler*, 35 F. Supp. 3d 650, 656 (M.D. Pa. 2014), *aff'd*, 626 F. App'x 375 (3d Cir. 2015). On the subsequent appeal, a new panel observed that the previous panel declared that Tyler, specifically, is "entitled to a new trial as a matter of law" in that scenario, binding both the new panel and that district court under the law of the case doctrine. *United States v. Tyler*, 626 F. App'x 375, 379 (3d Cir. 2015). The new panel lamented, "we are not free to disturb that ruling, even if we believe it to be in error." *Id*.

Although the Third Circuit initially declined to grant the initial hearing en banc, the Court went so far as to say, "the government is, of course, free to seek en banc review of this decision should it choose to do so, because there may yet be a few bites left on the apple." *Id*. A majority of the Court ultimately denied the Government's petition for en banc hearing.

253, *with Pulido*, 555 U.S. at 59 (holding that alternative theory errors on collateral review are subject to harmless-error analysis).

Other Courts of Appeal and district courts interpreting this issue have applied *Pulido*'s harmless-error inquiry to similar alternative theory errors on collateral review and on direct appeal. *See, e.g. Taylor v. Beard*, 811 F.3d 326, 335 (9th Cir.), *cert. denied sub nom. Taylor v. Kernan*, 137 S. Ct. 278 (2016); *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012), *as amended* (Mar. 29, 2012); *United States v. Belaire*, 480 F. App'x 284, 288 (5th Cir. 2012); *United States v. Skilling*, 638 F.3d 480, 481 (5th Cir. 2011); *Redmond v. Worthinton*, 878 F. Supp. 2d 822, 843 (E.D. Mich. 2012); *Hicks v. Gonzalez*, No. 09-2051, 2010 WL 4571577, at *9 (C.D. Cal. Aug. 6, 2010), *report and recommendation adopted*, No. 09-2051, 2010 WL 4571331 (C.D. Cal. Oct. 31, 2010).

### ii.  Effect of the improper jury instructions

Turning then to Petitioner's claims, the Court concludes that the erroneous jury instructions in this case were harmless.  Here, the jury instructions in each case erroneously described bank fraud as one offense with disjunctive elements, rather than two offenses with distinct elements.  As discussed above, the Court will assume that the worthless checks in this case are not "false representations" within the meaning of § 1344(2).  Accordingly, the question before the Court, is whether the false representation language in the jury instructions "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  Stated differently, the alternative theory error is harmless, if the Court is confident that the jury would have returned a guilty verdict under § 1344(1), absent the errors.  *See O'Neal*, 513 U.S. at 437 (concluding that the petitioner must win if a court has "grave doubt" as to the harmlessness of the error); *United States v. Elonis*, 841 F.3d 589, 598 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 67 (2017).

Here, the court instructed each jury that the Government must prove that Petitioner executed or attempted to execute a scheme or artifice: (1) to defraud a financial institution *or* to obtain money from a financial institution by means of fraudulent or false pretenses, representations, or promises; (2) that Petitioner did so knowingly and with intent to defraud; and (3) that the financial institutions were federally insured at the time of the offense. (App. 1278, 2466).

Without the "obtain money . . . by means of fraudulent or false pretenses, representations, or promises" language, the jury instructions match the post-*Loughrin* elements of a scheme to defraud a financial institution under § 1344(1). *Loughrin*, 134 S. Ct. at 2389–90; Model Jury Instructions, Criminal, Third Circuit, § 6.18.1344. Thus, to the extent that the jurors convicted Petitioner under § 1344(1) "the charge unnecessarily enhanced the government's burden." *Schwartz*, 899 F.2d at 248. This Court will not vacate a conviction because the jury instructions "placed an additional burden of proof upon the Government . . . which it was not required to sustain under the statute." *Id.*; *Johnson*, 462 F.2d at 427, *cert. denied*, 410 U.S. 937.

Alternatively, to the extent that any jurors relied on the notion that the worthless checks were false representations under § 1344(2), the Court finds that such jurors "necessarily found facts to establish guilt" under the valid theory, § 1344(1). *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011); *see Schwartz,* 899 F.2d at 246–47 (undertaking a similar harmless-error inquiry). Although unnecessary to a post-*Loughrin* § 1344(2) offense, the guilty verdict on the combined jury instructions established that Petitioner intended to defraud a federally insured financial institution, which satisfies the second and third elements of a § 1344(1) offense. *Compare* (App. 1278, 2466), *with* Model Jury Instructions, Criminal, Third Circuit, § 6.18.1344. Assuming again that checks drawn on insufficient funds cannot constitute a "representation," the jurors that

erroneously relied on § 1344(2) necessarily found that Petitioner executed a scheme, to obtain something of value, from a financial institution, that did not belong to him. (App. 1278, 2466).

The only question then, is whether such facts necessarily establish a scheme to defraud a financial institution under § 1344(1). The Third Circuit observed that the term "scheme to defraud" in § 1344(1):

> is not capable of precise definition. Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community. The bank fraud statute condemns schemes designed to deceive in order to obtain something of value.

*Schwartz,* 899 F.2d at 246–47.

Here, under Counts 8 through 16 of the 03-35 action, the jury found that Petitioner knew that the checks totaling $476,000.00 were not drawn on sufficient funds. Similarly, under Counts 1 and 2 of the 04-231 action, the jury found that Petitioner knew that the online payments totaling $11,043.74 to credit card accounts, were not drawn on sufficient funds. Accordingly, just as the Third Circuit reasoned in Petitioner's earlier bank fraud case, "*regardless of what representations* he may have made by the deposit of those checks, it simply cannot be denied that when [Petitioner] caused the various withdrawals" or made additional credit purchases, "he was obtaining money [or something of value] that was not his." *Id.* at 247 (emphasis added). Under the circumstances of these cases, "if [Petitioner] did not depart from fundamental honesty, moral uprightness, fair play and candid dealings, then it is difficult to understand what conduct would constitute such a departure." *Id.*

Taken together, because the juries necessarily found that Petitioner executed a scheme, to obtain something of value, that did not belong to him, from federally insured financial institutions, with intent to defraud those institutions, the Court finds that these facts establish guilt under §

1344(1).  As the Supreme Court observed in *Loughrin*, "the overlap between the two clauses is substantial . . . but that is not uncommon in criminal statutes."  *Loughrin*, 134 S. Ct. at 2390 n.4.

On a final note, as to Counts 8 through 10 of the 03-35 action, apart from the insufficient funds theory, the jury could have also found that Petitioner committed bank fraud by forging the signature of his then fiancé.  In which case, the forgery would constitute a false representation under § 1344(2), separate and apart from merely drawing a check on insufficient funds.

Consequently, despite the use of false representation language in each of Petitioner's cases, each juror either convicted petitioner under § 1344(1) or necessarily found facts that establish guilt under § 1344(1) in both of his cases. Thus, the Court finds that the erroneous instructions were harmless under *Brecht* and that Petitioner has failed to meet his burden to show that the instructions had a "substantial and injurious effect or influence in determining" the juries' verdicts in this case. *Brecht*, 507 U.S. at 637.  Accordingly, there is no basis for the Court to provide Petitioner with his requested habeas relief.

## V.  CONCLUSION

For the foregoing reasons, the Court will deny the Petition.  An appropriate order follows.


DATED:  September  26,  2018                    s/Robert B. Kugler
                                                 ROBERT B. KUGLER
                                                 United States District Judge